# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| DOMINO TWO, LLC, | ) |
|     Plaintiff, | ) |
| v. | )    No. 4:21-CV-00050-DGK |
| AUTO-OWNERS INSURANCE CO., | ) |
|     Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This case arises from an insurance contract whereby Global Real Estate Investments, LLC ("Global"), the owner of an apartment complex in Grandview, Missouri, purchased a commercial property and general liability insurance policy from Defendant.[1] Plaintiff Domino Two, LLC, as assignee of Global's rights and claims, alleges Defendant failed to pay an insurance claim for wind and hail damage from a storm in April 2019. Plaintiff asserts claims for breach of contract and vexatious refusal to pay.

Now before the Court is Defendant's Partial Motion for Summary Judgment on Plaintiff's claim for demolition expenses in the amount of $107,861.25. ECF No. 64. Because removal followed by replacement of component parts of an apartment complex, such as windows and doors, is not "demolition" under the insurance policy, the motion is GRANTED.

---

[1] Though Plaintiffs named Auto-Owners Insurance Company as defendant, the parties appear to agree that Owners Insurance Company, a mutual insurance company within the Auto-Owners Insurance Group, is the proper defendant in this case. *See Who We Are*, Auto-Owners Insurance, https://www.auto-owners.com/about/who-we-are (last visited Feb. 22, 2022).

**Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law," and a genuine dispute over material facts is one "such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the burden of showing this lack of genuine dispute as to any material fact, *Celotex Corp.*, 477 U.S. at 323, and the Court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in those parties' favor. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588–89 (1986). To survive a motion for summary judgment, the nonmoving party must nonetheless substantiate their allegations "with sufficient probative evidence [that] would permit a finding in [their] favor based on more than mere speculation, conjecture, or fantasy." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007) (internal quotations omitted).

**Undisputed Material Facts[2]**

The Court considers the following facts in the light most favorable to Plaintiffs. In 2019, Greg and Stacy Rich (collectively, the "Riches"), along with Shaun McNamara, owned Cedarwood Apartments, an apartment complex in Grandview, Missouri which consists of sixteen separate buildings ("property"). Greg Rich and Shaun McNamara were the principal members of Global

---

[2] The Court excluded asserted facts properly controverted by the parties, immaterial facts, facts not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. Fed. R. Civ. P. 56(c)(1).

Real Estate Investments, LLC ("Global"). On September 25, 2018, Defendant issued Global an insurance policy on the property for the policy period of November 14, 2018, to November 14, 2019 ("Policy"). Policy at 12–28, Def. Ex. 1, ECF No. 66-1.

Relevant to the instant motion, the Policy provided windstorm and hail coverage, as well as two forms of "Ordinance or Law" coverage to each building on the property, denoted in the Policy as Coverage A and Coverage B. *Id.* Coverage B, the relevant provision,[3] provides for demolition costs as follows:

> **Coverage B—Demolition Cost Coverage.**
> With respect to a covered building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires Demolition of such undamaged property.

*Id.* at 111. While the term "Demolition" is capitalized in the paragraph defining Coverage B, the term is not specifically defined in the Policy. *See* Policy, Def. Ex. 1, ECF No. 66-1.

In April of 2019, a hail and wind storm hit the property. On April 26, 2019, Global filed a claim ("April 2019 Claim") on the policy for damage to roofs, siding, windows, doors, HVAC systems, and other exterior components of the buildings. The claim noted that the roofs of many of the buildings were leaking. Claim at 2, Def. Ex. 2, ECF No. 66-2. On September 25, 2019, Defendant issued Global a check for $2,817.46 for "minor wind/hail damage to the buildings." Ultimately, Defendant paid a total of $5,134.72 on this claim.[4]

In September 2019, Billie Hufford, a rental inspector for the City of Grandview ("City"),

---

[3] Ordinance or Law Coverage A provides coverage for the loss in value to a property which has sustained covered damage when an ordinance or law requires the entire property be demolished. Policy at 111, Def. Ex. 1, ECF No. 66-1. Plaintiff seeks damages for the cost of repairs made to the property, not for the property's loss in value. *See* Compl., ECF No. 1.

[4] On May 11, 2020, Defendant paid Global $523.45 after Rich sent him a final invoice regarding the hail damage. On February 8, 2022, Defendant's Counsel sent Plaintiff's Counsel a check for $1,793.72 for damage to buildings resulting from the April 2019 storm. Pl. Ex. 1, ECF No. 73-1.

3

inspected the property as part of the City's Rental Inspection Program. On October 1, 2019, Ms. Hufford wrote a letter to Messrs. Rich and McNamara informing them that the property violated multiple provisions of the city's Minimum Building Preservation Code. Hufford Letter, Def. Ex. 3 at 6–8, ECF No. 66-3. The letter noted the following violations occurring throughout the property and directed Global to repair or replace the damage:

- Gutters only present over entryways. Due to the roof style, gutters need to be installed around the entirety of the buildings.
- Missing light covers on exterior lights. Replace as needed.
- Missing lightbulbs on exterior lights. Replace as needed.
- Sidewalks cracks with a vertical off-set in [excess] of one inch. Repair or replace as needed.
- Sidewalks with cracks and grass growing through cracks. Repair as needed.
- Rotted wood along the bottom exterior of all buildings. This is most likely due to the absence of gutters. Repair or replace as needed. You can avoid replacing the entire panel by removing the damaged portion and installing a new board as a "baseboard" with flashing.
- Rotted wood around windows. This is most likely due to the absence of gutters. Repair or replace as needed. Recommend flashing here also to prevent continued issues.
- Rotted wood around doors. Repair as needed. This is mainly at the bottom of door frames and most likely due to the absence of gutters. Repair or replace as needed. Recommend flashing here also to prevent continued issues.
- Rotted wood siding and trim. This is most likely due to the absence of gutters. Repair or replace as needed.
- Rotted or damaged doors. This is most likely due to the absence of gutters. Repair or replace as needed.
- Dumpsters are required to have enclosures. Requirements are included.
- Roof eaves of buildings falling, have gaps, or holes. Repair and replace as needed.
- Air conditioners not properly secured. Ensure no gaps in enclosure and adequate support is in place.
- Gaps in or protruding wood siding. Repair or replace as needed.
- Window frames damaged. Replace windows as needed.
- Door framing missing, damaged, or not painted. Repair or replace as needed.
- Items blocking doors and sidewalks. Entries and sidewalks must be clear of obstacles.
- Fencing between buildings along 140th damaged or missing boards. Repair, replace, or remove fencing.

4

- Fence facing Dollar General damaged or missing board. Repair, replace, or remove fencing.
- Chipped or peeling exterior paint. Paint as needed. Existing paint needs to be scraped before painting.
- Missing or damaged screens. Repair or replace as needed.
- Screens that cover the entire window and are secured to the exterior of the building are not acceptable. Repair or replace as needed.
- Hornet/wasp nests in fire extinguisher cabinets. Clean as needed.
- Dead trees. Remove.
- Damaged or missing apartment numbers. Replace as needed.

*Id.* at 6–7. In addition, the letter included the following building specific violations:

- [Building] 5600
  - Step made out of bricks and piece of countertop like material. Step is not secure as it is resting on bricks and the door threshold. Install secure step.
- [Building] 5500
  - Step broken. Remove or replace.
  - Damaged or missing brick. Repair as needed.
  - Handrail unstable and warped from moisture. Replace.
- [Building] 13919
  - Front stairs are not stable, blocks used to address damage. Repair or replace as needed.
  - Light along sidewalk damaged. Repair, replace, or removed. If removed ensure electric wiring is appropriately covered or removed.
  - Bushes need trimmed, blocking stair access.
  - Railing not secure. Repair or replace as needed.
  - Downspout missing. Replace.
  - Drain at bottom of stair in the back of the building full of debris and uncovered. Clean drain and ensure it is working properly. Replace cover.
  - Back stairs do not have adequate support. Repair or replace as needed.
  - Back stairs with cracks and chipping concrete. Repair or replace as needed.
  - Debris/trash blocking back door access. Access must be free of obstacles.
  - Backdoor railing damaged. Repair or replace as needed.
  - Foundation damage on south side of building. Repair as needed.
- [Building] 13923
  - Air conditioning unit covered with cardboard. Remove cardboard.
- [Building] 5509
  - Bricks used as steps damaged and not secure. Repair or replace.
  - Downspout damaged ad not connected to gutter. Repair or replace as

5

> needed.
> - [Building] 5605
>   - Bricks used as steps damaged not secure. Repair or replace.
> - [Building] 5609
>   - Stairs with missing concrete. Repair or replace as needed.
>   - Foundation hole. Repair as needed.
>   - Wood siding under plastic covered window appears to be missing. Repair.
>   - Plywood setup as a fence/backdrop of some sort by bird bath. If fencing needs to be proper fencing. If not please remove.
> - [Building] 5607
>   - Gaps between bricks and roof. This is most likely due to the absence of gutters causing foundation damage. Repair or replace as needed.
> - [Building] 5611
>   - Damaged fire extinguisher case. Repair or replace as needed.
>   - Weed overgrowth at back of building blocking back door access. Remove and clean area.
> - [Building] 5506
>   - Partial roof covered with tarps. Repair or replace roof.
> - Shed
>   - Damaged wood siding and framing. Replace as needed.
>   - Unpainted wood. Paint as needed.

*Id.* at 7–8. The letter also noted that "[m]any of the violations identified are due to improper fixes of previous problems and poor workmanship." *Id.* at 8.

Messrs. Rich and McNamara then hired Pyramid Roofing Company ("Pyramid"), who charged $176,000 to replace each roof[5] on the property and $359,537.50 to complete all other repairs required by the City. These repairs required a subcontractor to remove and replace siding, exterior doors, and windows on each of the buildings. The total bill for all of this work was $535,537.50.

On September 15, 2020, Plaintiff purchased the property from the Riches and Mr. McNamara. As part of the sale, Plaintiff also purchased their interest in "all existing insurance

---

[5] Plaintiff asserts that another contractor replaced one roof on the property before Pyramid began work. Pl. Resp. to Def.'s Statement of Uncontroverted Facts ¶ 16, ECF No. 73. The Court makes no finding regarding this allegation.

coverage, claims, proceeds, or any other insurance-related items, including . . . all claims, benefits or causes action against [the Policy]." Initial Disclosures at 6, Def. Ex. 6, ECF No. 66-6.

**Procedural History**

On December 4, 2020,[6] Plaintiff brought this suit in the Circuit Court for Jackson County, Missouri. Plaintiff alleged that Defendant refused to pay any of the bill from Pyramid beyond the $5,134.72 it paid on the April 2019 Claim, and that this constituted a breach of contract (Count I) and vexatious refusal to pay (Count II).[7] Compl., ECF No. 1. However, regarding the portion of Pyramid's bill relating to the non-roofing related repairs required by the City, Plaintiff only seeks damages relating to the cost of "demolition" of parts of the buildings, which Plaintiff has calculated as $107,861.25, or thirty percent of the $359,537.50 owed to Pyramid for non-roofing related repairs. Def.'s Statement of Uncontroverted Facts ¶¶ 28–31, ECF No. 66; Pl.'s Resp. to Def's Statement of Uncontroverted Facts ¶¶ 28–31, ECF No. 73.

**Discussion**

Defendant argues that Plaintiff incurred no demolition expense on the non-roofing related repairs as that term is defined in the Policy, thus it is entitled to partial summary judgment on Plaintiff's demolition claim.[8] Specifically, Defendant argues that an insured does not incur a

---

[6] Plaintiff's theory appears to be that the repairs mandated by the City of Grandview in October 2019 were at least partially the result of the April 2019 storm. It does not appear—either from the Complaint or from the parties' statements of fact regarding the instant motion, ECF Nos. 66, 73, 81—that Global or Plaintiff filed a separate claim for the repairs mandated by the City. The Court therefore assumes, for the purposes of this motion, that—at some point between October 1, 2019, the date of Ms. Hufford's letter, and the filing of this lawsuit—either Global or Plaintiff requested Defendant pay the cost of replacing the roofs and performing the repairs pursuant to the April 2019 Claim. However, nothing in the record indicates any such demand was ever made.

[7] Plaintiff's subtitled Count II "For Fraudulent Misrepresentation By Defendant." This is a typo: the count itself includes allegations supporting a claim for vexatious refusal to pay and references Mo. Rev. Stat. §§ 375.296 and .420, the Missouri statutes creating a claim for vexatious refusal to pay and defining damages available for such a claim. Compl. ¶¶ 50–56, ECF No. 1-1.

[8] Defendant also argues that Plaintiff has failed to show that a covered loss necessitated the non-roofing related work Pyramid did on the property. Suggestions in Supp. at 5–9, ECF No. 65. The Court is granting the motion on other grounds, and thus does not need to address this argument.

7

"demolition" expense unless a building is completely torn down. Suggestions in Supp. at 9–12, ECF No. 65. Plaintiff contends that a "demolition" need not be complete, but rather expenses incurred for "partial demolition," whereby a building remains standing but parts of a building are removed—with the intention of those parts later being replaced—are covered demolition expenses. Suggestions in Opp'n at 5–8, ECF No. 72. The parties agree that the Policy does not define "demolition." *See* Suggestions in Supp. at 10, ECF No. 65; Suggestions in Opp'n at 6, ECF No. 72.

Because this case arises under the Court's diversity jurisdiction, Missouri law governs the Court's construction of the Policy. *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). Under Missouri law, "[t]he interpretation of an insurance policy is a question of law to be determined by the Court." *Lafollette v. Liberty Mut. Fire Ins. Co.*, 139 F. Supp. 3d 1017, 1021 (W.D. Mo. 2015) (quoting *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. App. W.D. 2015)).

The Court reads the contract "as a whole and determine[s] the intent of the parties, giving effect to that intent by enforcing the contract as written." *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 840 (Mo. App. W.D. 2011). "Insurance policies are to be given a reasonable construction . . . ." *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 872 (W.D. Mo. 2020) (quoting *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661, 667 (Mo. App. E.D. 2001)). Thus, "[p]olicy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law). Where policy terms are ambiguous—meaning there is "duplicity, indistinctness, or uncertainty in the meaning of the word[] used in the contract"—the language is construed against the insurer and in

8

Case 4:21-cv-00050-DGK   Document 102   Filed 07/13/22   Page 8 of 11

favor of the insured. *Id.* However, if the insurance policy is unambiguous, it is enforced as written "absent a statute or public policy requiring coverage." *Id.* An undefined term in an insurance contract is not necessarily ambiguous. *See Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 512–13 (Mo. 2017) (holding an undefined term to be unambiguous).

Because the term "demolition" is not defined by the Policy, the Court turns to the dictionary to determine the ordinary meaning of the term. *Id.* at 512 ("When a policy does not define a particular term, courts use the ordinary meaning of the word as set forth in the dictionary."). Merriam-Webster defines "demolition" as "the act of demolishing"—which itself is less than helpful for the Court's purposes. MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/demolition (last accessed June 29, 2022). However, "demolishing" is the present participle form of the verb "demolish," which Merriam-Webster defines as "tear down [or] raze," or "to break to pieces [or] smash," and alternatively as "to do away with [or] destroy." MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/demolishing (last accessed June 29, 2022). Plaintiff argues that the dictionary definition "to do away with" shows that the policy includes mere removal of exterior components without complete destruction of the building. Plaintiff argues the contractors "did away with" parts of the building—such as the siding, windows, and doors. Suggestions in Opp'n at 6, ECF No. 72 ("Plaintiff doesn't disagree with the latter definition: 'to do away with.' That is exactly what the Contractors had to do: get rid of parts of the building: the siding, windows, and doors.").

Plaintiff's argument misses the mark. While the siding, windows, and doors were certainly done away with when they were removed from the property and disposed of, the buildings on the property were not. Ordinance or Law Coverage B covers the cost to demolish—or do away with— the buildings only. Policy at 111, Def. Ex. 1, ECF No. 66-1. ("With respect to a covered building

9

that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building . . .").

Similarly, the definitions "tear down," "destroy," and especially "raze" indicate that "demolition" as that term is defined in the policy requires a covered building to be completely torn down.

When read as a whole, Ordinance or Law Coverage B indicates that an insured's demolition cost is only covered when a building is fully torn down, as Defendant agreed to—where a covered building has otherwise sustained covered direct physical damage—"pay the cost to demolish *and clear* the site of undamaged parts of the same building" where a city ordinance requires the building be demolished. *Id.* (emphasis added); *see also* Policy at 112 ¶ 3, Ex. 1, ECF No. 66-1 ("Loss payment under Coverage B—Demolition Cost Coverage will be determined as follows: We will not pay more than the lesser of the following: [a] The amount you actually spend to demolish and clear the site of the described premises; or [b] the applicable Limit of Insurance shown for Coverage B in the Declarations."); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 488 F. Supp. 3d 867, 875 (W.D. Mo. 2020) ("[U]nder Missouri law 'the provisions of an insurance policy are read in the context of the policy as a whole,' not in isolation. (quoting *Am. Econ. Ins. Co. v. Jackson*, 476 F.3d 620, 624 (8th Cir. 2007))).

The Policy is not ambiguous, and Plaintiff has not argued that a statute or public policy requires coverage. Because a reasonable jury could not find that Plaintiff is entitled to the $107,861.25 cost to remove external parts of the buildings, Defendant is entitled to summary judgment on Plaintiff's claim for demolition expenses in the amount of $107,861.25.

## Conclusion

Defendant's motion for partial summary judgment is GRANTED.

**IT IS SO ORDERED.**

Date: July 13, 2022               /s/ Greg Kays
                                  GREG KAYS, JUDGE
                                  UNITED STATES DISTRICT COURT